Fredonia National Bank, Assignee of J. A. Waterhouse, *v.* H. P. Perrin and A. Borden, T. D. Collins, Terre Tenant., Appellant.

Fredonia National Bank, Assignee of J. A. Waterhouse, *v.* H. P. Perrin and A. Borden, T. D. Collins, Terre Tenant, Appellant.

H. P. Perrin, A. Borden and H. J. Pemberton in part for Use of Fredonia Nat. Bank and in part for Use of Farmers' Bank of Springville, N. Y., *v.* J. A. Waterhouse and W. B. Hooker, T. D. Collins, Terre Tenant, Appellant.

*Mortgage—Trust and trustees—Timber—Application payment.*

Where a person purchases timber without knowledge or inquiry as to the existence of mortgages upon the land, and gives checks and notes which are deposited by the owner in a bank for collection, and the proceeds of which when received are used by the owner in developing the land for oil, and it appears that the cashier of the bank which had collected the checks and notes was a trustee for the mortgagees to apply the proceeds of oil from the land in reduction of the mortgages, the purchaser of the timber has no standing to claim that the proceeds of the timber should be applied in reduction of the mortgages and in relief of the timber where there is no evidence of any agreement among the parties, or any trust by which the bank or its cashier was to apply the proceeds of the timber towards the payment of the mortgages.

Argued Oct. 10, 1895.  Appeals, Nos. 238, 239 and 240, Oct. T., 1895, by Truman D. Collins, terre tenant, from judg-

ment of C. P. Forest Co., Feb. T., 1893, Nos. 53, 54 and 58, tried by the court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before NOYES, P. J.

It appeared at the trial of these three cases that for a few months prior to March 29, 1890, J. A. Waterhouse, H. P. Perrin, H. J. Pemberton and C. C. Camp were the owners of a large tract of oil-producing land in Howe township, Forest county, a part of it held in fee and a part by lease.

Waterhouse and Perrin each held one third and Pemberton and Camp each one sixth interest. This tract was subject to a purchase money mortgage held by Pratt & Phillips, from whom they had purchased.

Camp sold his interest (one sixth) to A. Borden, and on the 29th of March, 1890, Waterhouse sold his one third interest to Perrin & Borden, and then Perrin became the owner of one half and Borden of one third interest in the land. To secure the purchase money Perrin & Borden gave Waterhouse two mortgages for $28,000 on the one third interest which he conveyed to them.

These mortgages were assigned by Waterhouse to the Fredonia National Bank, prior to September 3, 1891. (February 6, 1893, in common pleas of Forest county, writs of scire facias were issued on these mortgages to Nos. 53 and 54 February term, 1893.)

November 28, 1890, Perrin, Borden and Pemberton conveyed these oil lands to J. A. Waterhouse and W. B. Hooker, who gave a purchase money mortgage to secure their notes for $89,000. Prior to September 3, 1891, Hooker conveyed his interest to Waterhouse. Some of the Waterhouse and Hooker notes were negotiated to the Fredonia National Bank and some to the Farmers' Bank of Springville, N. Y., and the balance were held by the mortgagees, Perrin, Borden and Pemberton, at the time of bringing suit.

Prior to September 3, 1891, an arrangement was made between the mortgagor and the mortgagees and the two banks, by which the oil produced from the land was to be run to the credit of F. R. Green, the cashier of the Fredonia bank, by which

arrangement he became the agent or trustee of the parties interested, for the purpose of selling the oil and after paying the expenses of operating the property, applying the balance upon the mortgage debts against it. Waterhouse, on the 3d day of September, sold and conveyed the timber on three subdivisions of the land, Nos. 6, 7 and 8, embracing about 300 acres, to T. D. Collins for $3,000, one third in cash by check on the Brookville National Bank, of Brookville, Pa., and the balance in two notes of $1,000 each, due in six and twelve months, respectively. The check and notes were given to Green and were paid to the Fredonia National Bank, of which he was cashier, and the proceeds of the check and notes were given by Green to Waterhouse, and used by him to pay operating expenses.

Collins had no knowledge of the mortgages upon the property. The last note of Collins for $1,000 was collected through Green's bank September 6, 1892, on the day of its maturity.

On the 9th of February, 1893, a writ of scire facias was issued on this last mortgage in the name of Perrin, Borden and Pemberton to No. 58, February term, 1893.

A jury trial was waived and the cases were tried before his honor, C. H. NOYES, P. J.

The opinion of the court in Nos. 53 and 54, Feb. T., 1893, being the first two of the above cases, was as follows :

These two cases of scire facias sur mortgage were tried together before the court, June 18, 1895, jury trial being waived in both. No defense was interposed by the defendants in the scire facias, but Truman D. Collins, who had been permitted to intervene, pro interesse suo, upon his petition setting forth among other things that he was the purchaser of the standing timber upon a portion of the mortgaged premises, pleaded payment with leave, and upon this plea issue was joined.

### FINDINGS OF FACT.

Both the mortgages in suit were given to secure the same indebtedness evidenced by a series of negotiable promissory notes, some made by Andrew Borden and indorsed by H. P. Perrin, others made by Perrin and indorsed by Borden, and amounting in the whole to $28,000. The mortgages were both assigned to the Fredonia National Bank by J. A. Waterhouse,

the mortgagee, May 9, 1890.    November 28, 1890, Borden, Perrin and one Pemberton conveyed the mortgaged premises to J. A. Waterhouse and W. B. Hooker, Waterhouse and Hooker giving a large number of negotiable promissory notes in payment of the purchase money, and securing the payment of the same by a joint mortgage upon the same property described in the mortgages in these actions. It is admitted of record that prior to September 3, 1891, the title to the timber upon the mortgaged premises was vested in J. A. Waterhouse. There is no evidence that any of the notes secured by the two mortgages in suit had been paid, except that for the liquidation of judgments heretofore entered in this court. In these cases the plaintiffs filed a paper claiming only for four of the notes, amounting together to $14,000, with interest from March 28, 1890, and $628 attorneys' commissions. From this we find that the amount due and unpaid of the mortgage debt is $14,000, with interest as aforesaid, and attorneys' commission of five per cent, as provided in the mortgages.

On the 3d day of September, 1891, J. A. Waterhouse sold and conveyed to T. D. Collins, the terre tenant, the standing timber on part of the mortgaged premises for $3,000, which was its fair market value at the time, Collins giving in payment of the purchase money negotiable promissory notes, all of which were paid before the commencement of these proceedings. At and before the time of this sale the Fredonia National Bank was a holder of some of the notes given by Waterhouse and Hooker as purchase money to Borden, Perrin and Pemberton, and secured by the mortgage given by Waterhouse and Hooker before referred to. The Farmers' Bank of Springville, N. Y., was the holder of other notes of the same series. F. R. Green was the cashier of the Fredonia National Bank. The oil produced from the mortgaged premises was run in the pipe lines to the credit of Green by some arrangement between the owners of the property and the holders of these notes, and was sold by Green and the proceeds applied to the payment of the notes secured by the Waterhouse and Hooker mortgage as trustee for that purpose. Prior to making the sale of the timber to Collins, Waterhouse informed Green that he intended to sell the timber. After the sale he delivered to Green the notes given by Collins for the purchase money for collection through the

Fredonia National Bank, and with the understanding that the proceeds were to be turned over by Green to Waterhouse to pay for operations upon the mortgaged premises. Green knew at the time that the notes represented the purchase money of the timber sold to Collins. He received the proceeds of the notes when paid and turned it over to Waterhouse in accordance with the understanding.

I find specifically as requested by the plaintiff as follows:

" 1st. When T. D. Collins, the terre tenant, purchased from John A. Waterhouse the timber which is the subject-matter in controversy in this suit, said Collins did not know of the existence of the mortgage upon which this suit was brought, nor did he make any examination of the records or inquire of John A. Waterhouse concerning liens upon said timber.

" 2d. At the time of the sale of said timber by said Waterhouse to said Collins, neither the Fredonia National Bank nor F. R. Green, its cashier, had any notice of such sale."

As I have already found, Green knew that Waterhouse intended to sell the timber, but there is no evidence that he knew of the specific sale to Collins, nor to whom or upon what terms Waterhouse intended to sell, nor that the information was given to him in his capacity of cashier of the bank.

" 3d. No portion of the proceeds of the sale of said timber by said Waterhouse to said Collins was paid to said Green either by said Collins or by said Waterhouse to apply upon any of the notes secured by the mortgage in suit.

" 5th. There was no express release of any of this mortgage or any part thereof upon said timber sold by said Waterhouse to said Collins.

" 6th. There was no authority from the Fredonia National Bank to F. R. Green to release the mortgage in suit from said timber sold by Waterhouse to said Collins.

" 7th. Neither the Fredonia National Bank nor any of its officers other than F. R. Green had any knowledge of the sale of said timber by said Waterhouse to said Collins, nor the payment of any of the purchase money of such sale by said Waterhouse to said Green in any capacity."

I have adopted the 3d and 5th requests for findings of fact on the part of the defendants in my general findings, and so much of the other requests as I am able to find sustained by the evidence.

### CONCLUSIONS OF LAW.

I adopt and affirm the first proposition of law on the part of the plaintiff. I do not think it necessary to answer the second, specifically, under the facts in this case.

Much that is contained in the points of law presented by the defendants, is correct in the abstract, but I am unable to adopt any of them as applied to the facts of this case. My general conclusion of law is, that the facts in evidence do not sustain the plea of payment with leave interposed by the terre tenant, and that the plaintiff is entitled to enforce its mortgages as well against the timber, purchased by the terre tenant as against the mortgaged premises in general, unless exceptions are filed within five days. Judgment will therefore be entered in favor of the plaintiff and against the defendants and the terre tenant for the sum of $19,259.32, being the amount of the four notes with interest, as aforesaid, to this date, and the attorneys' commission 5 per cent on $14,000, as provided in the mortgage.

The opinion of court, in No. 58, February term, 1893, being the third of the above cases, was as follows:

This is an action of scire facias sur mortgage. A jury trial having been waived the cause was tried before the court, June 18, 1895. No defense is interposed on the part of the defendants, but Truman D. Collins, who had been permitted to intervene as terre tenant pro interesse suo upon his petition setting forth, among other things, that he was the purchaser of the timber upon a portion of the mortgaged premises, entered a plea of payment with leave, and upon this plea issue was joined. On the trial, by leave of court, the record and proceedings were amended so that the case should stand for the use in part of the Fredonia National Bank of Fredonia, N. Y., and in part of the Farmers' Bank of Springville, N. Y. The mortgage in suit was dated the 28th day of November, 1890, and given to secure a large number of negotiable promissory notes, described in the mortgage, amounting to $89,000; the said notes falling due, with interest, at various times beginning six months from the date of the mortgage. The mortgage contains a provision authorizing the scire facias to issue and judgment to be taken for the full amount of the mortgage unpaid, upon default of payment of any note or interest for thirty days, subject to stay of execution upon payment of the whole amount due, and costs.

The Farmers' Bank of Springville, N. Y., is the holder of four notes made by J. A. Waterhouse for $2,916.66 each, with interest from November 28, 1890, all of which had been due more than thirty days at the time of the issuing of the scire facias in this case. The Fredonia National Bank of Fredonia, N. Y., is the holder of notes made by W. B. Hooker, and of one note made by J. A. Waterhouse, as per schedule marked Exhibit A attached to this finding, containing also a statement of the notes held by the Farmers' Bank, as aforesaid. All these notes are parcel of the notes secured by the mortgage above referred to, and are unpaid and due with interest. There is no evidence from which I can find whether any other of the notes secured by the mortgage have been paid or not, or who are the legal holders thereof.

Prior to the 3d day of September, 1891, F. R. Green was the cashier of the Fredonia National Bank. By some arrangement between the owners of the property, and the holders of the notes secured by the mortgage in suit, or some of them, including the Fredonia National Bank and the Farmers' Bank of Springville, N. Y., the oil produced from the mortgaged premises was run in pipe lines to the credit of F. R. Green, as trustee, by whom it was sold and the proceeds applied to the payment of the notes held by the parties to this arrangement; Green acting as trustee for the owners and other creditors in this manner and to this extent.

On the 3d day of September, 1891, J. A. Waterhouse had title to the timber on the mortgaged premises, and sold the same to T. D. Collins, the terre tenant, for the sum of $3,000, which was its fair market value at the time. Before making the sale Waterhouse obtained the consent of Borden, and informed F. R. Green that he intended to sell the timber, but without informing him to whom the sale was intended to be made or of the terms of sale contemplated. After the sale Waterhouse delivered the notes given by Collins in payment of the purchase money to Green for collection through the Fredonia National Bank. Green knew at the time that the notes represented the purchase money of the timber on the mortgaged premises. At the time of the delivery of the notes it was understood between Green and Waterhouse that the avails of the notes when collected should be used in payment of the

expenses of drilling oil wells upon the mortgaged property, and the money received from Collins, when the notes were paid, was turned over by Green to Waterhouse for the purpose, in pursuance of that understanding.

I find specifically the facts as requested by the plaintiffs in their requests as follows:

" 1st. When T. D. Collins, the terre tenant purchased from John A. Waterhouse the timber which is the subject-matter in controversy in this suit, said Collins did not know of the existence of the mortgage upon which this suit was brought, nor did he make any examination of the records or inquire of John A. Waterhouse concerning liens upon said timber.

" 2d. At the time of the sale of said timber by said Waterhouse to said Collins, neither the Fredonia National Bank nor F. R. Green, its cashier, had any notice of such sale.

" 3d. No portion of the proceeds of the sale of said timber by said Waterhouse to said Collins was paid to said Green, either by said Collins or by said Waterhouse, to apply upon any of the notes secured by the mortgage in suit.

" 5th. There was no express release of any of this mortgage or of any part thereof upon said timber sold by said Waterhouse to said Collins.

" 6th. There was no authority from the Fredonia National Bank to F. R. Green to release the mortgage in suit from said timber sold by said Waterhouse to said Collins.

" 7th. Neither the Fredonia National Bank nor any of its officers other than F. R. Green had any knowledge of the sale of said timber by said Waterhouse to said Collins, nor the payment of any of the purchase money of such sale by said Waterhouse to said Green in any capacity.

" 8th. Four of the notes secured by the mortgage in suit and unpaid, to wit: One payable in twelve months from the date thereof, one payable in eighteen months from the date thereof, one payable in twenty-four months from the date thereof, and one payable in thirty-six months from the date thereof, each being for the sum of $2,916.66, were discounted by the Farmers' Bank of Springville, New York, before maturity and before the sale of said timber by said Waterhouse to said Collins, and said notes now belonging to said Farmers' Bank of Springville, New York.

"9th. Neither said Farmers' Bank of Springville, New York, or any of its officers had any knowledge of the sale of said timber by said Waterhouse to said Collins, nor was any portion of the proceeds of said sale received by said bank.

"10th. Said Farmers' Bank of Springville, New York, did not in any way either expressly or by implication release the lien of the mortgage in suit, or any part thereof from said timber sold by said Waterhouse to said Collins, unless the facts hereafter found amount to such release."

I have adopted in my general findings the requests of the defendants Nos. 1st, 2d, 4th and 6th, with some slight changes required by my view of the evidence. I have found specifically as requested in the defendants' 3d and 5th requests.

### CONCLUSIONS OF LAW.

I answer the propositions of law presented by the plaintiffs as follows:

"1. Under all the evidence in this case, there is no release shown of the mortgage in suit, upon the timber sold by John A. Waterhouse to T. D. Collins, and the plaintiff is entitled to recover against said Collins as terre tenant the full amount of the judgment recovered upon this mortgage against the defendants in this case. *Answer:* I answer that in the affirmative.

"2. A release by F. R. Green of the mortgage upon the timber sold by said Waterhouse to said Collins would not be binding upon the plaintiff bank, unless such release was authorized by the bank or subsequently ratified by it. *Answer:* This is answered in the affirmative; but must not be understood to mean that express and written authority would be necessary to make such release valid.

"3. The notes in evidence are commercial paper in form, and the mortgage sued upon is but security for them, and the other notes described therein. Any defense therefore which the defendant is precluded from making against the notes in the hands of the present holders, he cannot make against said mortgage so far, at least, as such notes are affected. *Answer:* This is answered in the affirmative.

"4. Under the uncontroverted evidence in the case, the plaintiffs are entitled to recover for the use of the Farmers' Bank

of Springville, New York, for the amount of money, with interest, it advanced upon the notes in evidence, secured by the mortgage sued upon, which were discounted by said bank. *Answer:* This is answered in the affirmative."

I am unable to adopt as applicable to this case any of the propositions of law submitted by the defendants, though some of them are correct in the abstract. My general conclusion of law is, that the facts shown by the evidence, and found by the court, do not sustain the defendants' plea of payment with leave, and that the plaintiffs are entitled to judgment for the amount of the mortgage debt remaining unpaid, with interest and attorneys' commission; the execution to be subject to the equitable control provided for in the mortgage.

Unless exceptions are filed in five days, judgment is therefore directed to be entered in favor of the plaintiffs and against the defendants and the terre tenant for the sum of thirty thousand, four hundred and seventy-one and six one hundredths dollars, being the amount remaining due and unpaid to the use plaintiffs of the mortgage debt, with interest to this date, and attorneys' commission as provided in the mortgage.

A supplemental opinion of the court in all three cases was as follows:

My reasons for the conclusions of law arrived at in these cases may be briefly stated. It is unquestionably true, as stated by the defendants in their fourth point, that the owner of the mortgaged premises had a right to sell the timber thereon, and the purchaser a right to remove it from the premises unless prevented by some order or injunction. It is equally true that the holders of the notes secured by the mortgage were bound to accept payment of those notes after maturity when it was tendered by the owner, and could not decline to receive such payment because the money was the proceeds of the sale of the timber. Nevertheless, if the equitable owner of the mortgage authorized the mortgagor to sell the timber, meaning by this to sell it discharged of the lien of the mortgage, or if knowing that it had been in fact sold by the owner upon that footing, he received the proceeds as a payment upon the mortgage, the lien of the mortgage would be discharged from the timber.

The difference between the view of the Supreme Court which led to its reversal of the judgment of this court for want

of a sufficient affidavit of defense, and the view taken by us, seems to be in the construction of the affidavits; the Supreme Court giving to the language used a broader meaning than we thought was justified. But under the facts in evidence here, the questions touched upon by the Supreme Court do not rise. The Fredonia National Bank is practically a trustee for whoever may be the owner of the outstanding notes secured by the mortgage. It could bind only itself by any act such as that alleged against it. And it does not appear that the bank has either authorized any sale, received any proceeds, or ratified any sale of the timber after it was made. Its only connection with the transaction was the collection of the notes for Waterhouse, who was the owner of them, and turning over the proceeds in accordance with his directions.

The fact that prior to the sale Waterhouse said to Green, the cashier of the bank, that he intended to sell the timber, without giving him any information as to the particular sale intended to be made, or any intimation that the purchaser was to take the timber discharged of the mortgage, or that his consent or that of the bank was either desired or deemed necessary, is certainly of no significance. Nor can the receipt of the money by the bank, in due course of business, or by Green under the express arrangement with Waterhouse for its application, and not as a payment upon the mortgage, be regarded as a ratification of the sale or extinguishment of the lien of the mortgage in whole or in part.

The simple fact is that the terre tenant purchased this timber and paid for it without taking the trouble to examine the records, where he might have found complete information as to the incumbrances upon it. We greatly regret that he should suffer loss, but it has been caused by his own supine negligence, and there is no reason disclosed in the evidence, legal or equitable, why it should be cast upon the holders of the notes secured by the mortgages in suit.

*Error assigned* was in entering judgments as above in all three cases.

*J. W. Lee, T. F. Ritchey* and *Samuel T. Neill* with him, for appellant.—The owner of the land had a right to sell the tim-

ber, notwithstanding the mortgage upon the land: Hoskins v. Woodward, 45 Pa. 42; Wilson v. Maltby, 59 N. Y. 127.

The appellant had a right to buy and remove the timber from the land unless guilty of waste as against the plaintiff, a mortgage creditor: Angier v. Angew, 98 Pa. 590.

Ths conversion of the timber into money by Waterhouse, and using that money in operating for and producing oil on the mortgaged premises, was not waste.

The plaintiff's cashier and agent, having permitted the sale of the timber by the owner, and received the proceeds of the sale, it cannot claim a right to retain a lien on such timber: Baird v. Corwin, 17 Pa. 462; Fredonia Bank v. Perrin, 166 Pa. 177.

The estate of Collins in the timber stood as surety to the plaintiff for the estate of Waterhouse in the land, and plaintiff was bound to apply the money received from the sale of the timber to the benefit of Collins in extinguishing its liens thereon: Mevey's App., 4 Pa. 80; Martin's App., 97 Pa. 85; Paxton v. Harrier, 11 Pa. 312; German Am. Bank v. Foreman, 138 Pa. 474.

The plaintiff, as the owner of a prior mortgage on an undivided third interest in the land, had a right to apply the amount of money from the timber to the extinguishment of the mortgage debt, unless it was in excess of the value of the one third interest in the land.

But whether the money for the timber went to the extinguishment of the mortgage debts or not, it is contended on behalf of appellant that its receipt by Green, with knowledge of the fact that it was from the sale of the timber under the facts found by the court, operated as payment and release of the lien of the mortgage.

If a debt is secured by a mortgage either of the mortgagees may receive payment and discharge the whole debt: Freeman on Cotenants, sec. 178; Bowes v. Seeger, 8 W. & S. 222; Packer v. Owens, 164 Pa. 185; Fesmire v. Shannon, 143 Pa. 201; Ackla v. Ackla, 6 Pa. 228.

*M. H. Byles* and *D. I. Ball*, *P. M. Clark* with him, for appellees.—In the face of the express findings of fact that Green had no authority from bank to release the mortgage, there does

not seem to be any opportunity to offer any argument upon the subject. No authorities need be cited to show that an agent cannot do what he has no authority to do.

But Green did not undertake to release the mortgage. Waterhouse simply told him "there was some timber on the land which he was thinking of selling," and there is no evidence that this information was given to him in the capacity of cashier of the bank. He was not informed of the person to whom the sale was to be made, nor of the terms nor time of the proposed sale, and after the sale we submit that any part he took in relation to the proceeds of the sale of the timber was as agent for Waterhouse and not as agent for the bank.

Surely the Fredonia National Bank has done nothing to prejudice Mr. Collins, the appellant, in this matter. It did not know of the sale of the timber to him, and took no part in such sale. Collins' notes merely passed through it for collection.

The mortgage in this case showed upon its face that it was given to secure a series of promissory notes. These notes were commercial in form, and four of them were held by the Farmers' Bank. The transfer of these notes by the mortgagees to the Farmers' Bank carried with them a right to the mortgage as security for them. The assignment of a mortgage debt carries with it the mortgage: Moore v. Cornell, 86 Pa. 320; De-Witts' App., 76 Pa. 283; Borland v. Meurer, 139 Pa. 513.

No defense can be interposed to a mortgage by the mortgagor which is excluded from being set up against the notes secured thereby: Welton v. Littlejohn, 163 Pa. 205.

A mortgagee for the benefit of others interested in the security is not clothed with the power to extinguish the mortgage regardless of the rights of the real beneficiary for whom he stands in the relation of trustee: McClaughry v. McClaughry, 121 Pa. 477; Peterson v. Lothrop, 34 Pa. 223; Roberts v. Halstead, 9 Pa. 32; Betz v. Heebner, 1 P. W. 280.

*J. W. Lee, T. F. Ritchey* and *Samuel S. Neill* with him, for appellant, in reply.—F. R. Green represented all the parties in interest in these mortgages and had a right to receive the money for the timber.

The Farmers' Bank had no superior right in this case.

The questions raised in Welton v. Littlejohn, 163 Pa. 205,

have no application here. If this plaintiff has a remedy it is against Green, its own agent, who collected the price of the timber from Collins. As a bona fide holder of the notes and a use plaintiff in this suit, it cannot avoid the defense of Collins, nor deny responsibility for Green's acts.

To make a sale of the timber or the oil or the coal from the land by a mortgagor good, there must not only be an acquiescence on part of the mortgagee, but there must be an intention to release the lien of the mortgage before it can have that effect : Collins's App., 166 Pa. 177 ; Pratt v. Waterhouse, 158 Pa. 45.

No court in this land would enjoin Collins were he now removing his timber, on the ground that it was waste, and that is the test: Hastings v. Crunckleton, 3 Yeates, 261 ; Shoemaker's App., 106 Pa. 392 ; Sayers v. Hoskinson, 110 Pa. 473.

OPINION BY MR. JUSTICE MITCHELL, November 4, 1895 :

Though the transactions involved in these cases were somewhat complicated, the really essential facts may be stated in brief compass. Waterhouse was the owner of the premises in question, subject to the mortgages now in suit. There appears also to have been a prior mortgage to Pratt and Phillips with which we are not now concerned. In September, 1891, Waterhouse sold the timber on the mortgaged land to Collins the appellant. The price was paid by check and notes which were deposited by Waterhouse with Green the cashier of the Fredonia National Bank for collection, and were subsequently paid by appellant to that bank. At that time the land was being operated for oil, and by arrangement between the owner of the land and the holders of the notes secured by the mortgages, the proceeds of the oil were paid to Green to be applied to the reduction of the mortgages. The purchase money of the timber was handed over by Green to Waterhouse, and used in defraying the expenses of operating the land for oil. The appellant's claim is that as his money, which he paid for the timber, was used for the expenses of operating and thereby increased the profits from the oil which went to the reduction of the mortgages, it should in equity be treated as if it had been applied directly to that purpose, and the timber thereby released from the lien of the mortgages, in accordance with the principle heretofore laid down in this case in Pratt v. Waterhouse, 158 Pa. 45, and Waterhouse v. Borden, 166 Pa. 177.

It is not contended by the appellant that there was any express agreement by Waterhouse, or Green, or the bank, to make such application of the proceeds of the timber. The duty to do so must arise if at all from the equity of the circumstances, and at this point we are met by the most unsatisfactory portion of the case, the character and extent of the trust held by Green in regard to the operations on the land and the application of the proceeds. All that the learned judge below was able to find on the subject was that there was "some arrangement," and he expressly says in his supplemental finding at the request of appellant, that "there is no evidence of the agreement creating (the trust) nor who were the parties to it, nor what were its terms, except the statements of Green, as to his understanding of its import as affecting particular matters." The absence of specific evidence on these matters is the appellant's misfortune, for the burden of proving his case rested on him, and without information as to the parties, or the terms of the trust, no chancellor could safely say that the knowledge of Green, and of Borden one of the mortgagees, and their consent to the sale of the timber, raised any duty or any equity that the proceeds should be applied to the mortgages. In the legal aspect of the case the crucial fact is that the money belonged to Waterhouse, and unless a clear equity to the contrary be shown, his right to the control and disposition of it cannot be questioned. He was the owner of the land, in possession. He sold the timber, received the check and notes for it, and put them in the bank for collection merely. The money therefore was his. Appellant made no stipulation as to the application of it, for he bought without knowledge and without inquiry as to incumbrances. The mortgagees if they knew of the sale at all, did not interfere. They were not bound though they would have had a right to do so if they thought their security was being impaired. As already said there is no evidence of any such trust in Green as made it his duty to interfere. Waterhouse's control therefore was absolute. He might have used it to pay his personal debts, or he might have directed it to be applied to the mortgages, but he did not do so and the fact that he used it for operating expenses on the land, standing as it does, by itself, is not sufficient to raise an equity which we can apply in relief of the appellant. It is a hard case for him, but it is the case of every

purchaser of a title subject to incumbrances against which he has not provided.

It is hardly necessary to say that when this case was here before (166 Pa. 177) is was decided on the facts as they appeared in the affidavit of defense. On the trial the appellant failed to establish the principal averment that the proceeds of the timber were paid over to and received by the bank, and the case as now presented fails in its most important point.

Judgment affirmed.